EDWARD R. CROCKETT AND SALLY S. CROCKETT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Crockett v. Commissioner
Docket No. 46192-86
United States Tax Court
T.C. Memo 1990-201; 1990 Tax Ct. Memo LEXIS 218; 59 T.C.M. (CCH) 452; T.C.M. (RIA) 90201; April 19, 1990
Paul William Raymond, for the petitioners. Joseph E. Mudd, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: Respondent determined the following deficiencies in and additions to petitioners' Federal income tax: Additions to Tax
Year
Deficiency
Sec. 6653(a) [1]
Sec. 6653(a)(1)
Sec. 6653(a)(2)
1980
$ 44,097.00
$ 2,205.00
n/a
n/a
1981
26,166.00
n/a
1,308.00 *
*219 After concessions, the issues for consideration are: (1) whether petitioners are entitled to investment tax credit under section 38 for equipment leased to corporations controlled by petitioner; and (2) whether petitioners are liable for the additions to tax under sections 6653(a), 6653(a)(1), and 6653(a)(2). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein. Petitioners resided in Long Beach, California, when they filed their petition in this case. During the years at issue, petitioner (all references to petitioner are to Edward R. Crockett) was president and owner of 70 percent of the outstanding stock of Crockett Container Corporation (Crockett Container) and Jim's Box Company (Jim's Box). Crockett Container and Jim's Box manufacture corrugated boxes. In 1980, petitioner concluded that both Crockett Container and Jim's Box needed new equipment in order to be competitive. Petitioner had hoped that the corporations could purchase the items of equipment without his personal guarantee of the debt. However, because the corporations were unable to obtain financing without *220 recourse to petitioner, he bought the equipment in his individual capacity. The purchases were financed by PhoenixCor Financial Services. Petitioner purchased the following pieces of equipment, which he subsequently leased to Crockett Container and Jim's Box: Date of
Purchase
Useful
Purchase
Item
Price
Life
10/15/80
Langston Corrigator
$ 103,000
7 years
10/24/80
Ward Die Cutter
335,000
7 years
11/26/80
Marquip Splicers
96,330
7 years
5/10/81
Langston Gluer
500,000
12 years
Shortly after petitioner purchased the equipment, his attorneys prepared leases providing for the following terms which petitioner executed as lessor and on behalf of the lessees: Item
Lessee
Date of Lease
Lease Term
Langston Corrugator
Jim's Box
11/3/80
41 months
Marquip Splicers
Crockett Container
1/5/81
41 months
Ward Die Cutter
Crockett Container
1/5/81
41 months
Langston Gluer
Crockett Container
5/10/81
5 years
None of the leases provided for an option to renew. When he executed the leases, petitioner intended for Crockett Container and Jim's Box to use the equipment for its entire useful life. Seven years *221 after the leases were executed, the equipment was still in use by the corporations. After the lease terms expired, petitioner did not consider renegotiating or renewing the leases, nor did he discuss the issue with his attorneys. Pursuant to the lease agreements Crockett Container and Jim's Box made regular payments to petitioner which he forwarded to PhoenixCor Financial Services. He intended for this procedure to continue until the debt on the equipment was satisfied. The corporations continued to make the payments for at least seven years after the leases were executed. Petitioner's primary purpose in leasing the equipment to the corporations was to pass through to him investment tax credits which were of no value to Crockett Container and Jim's Box because they had no income tax liability. Petitioner had no intention of earning a profit from leasing the equipment to Crockett Container and Jim's Box, nor did he attempt to lease the items at issue or any other equipment to other companies. OPINION I. INVESTMENT TAX CREDIT
Section 38 allows a credit against tax for investments in certain depreciable property in an amount determined under section 46. Section 46(e)(3)(B), *222 in relevant part, provides that a noncorporate lessor such as petitioner is entitled to investment tax credit under section 38 with respect to leased property only if: (1) the lease term for the property is less than 50 percent of the useful life of the property; and (2) during the first 12 months after the property is leased deductions allowable to the lessor solely under section 162 with respect to the lease of the property exceed 15 percent of the rental income from the property. Respondent concedes that deductions allowable under section 162 exceed 15 percent of the rental income from the property, and that therefore the second prong of the test is met. The issue before us is whether the lease terms of the items of equipment are less than 50 percent of their useful lives. Whether the equipment leases satisfy this requirement is a question of fact, and petitioners bear the burden of proof with respect to this issue. ; Rule 142(a). The duration of a lease is decided based on the realistic contemplation of the parties when the lease was entered into. , *223 affg. a Memorandum Opinion of this Court; , affg. a Memorandum Opinion of this Court. If there is a reasonable certainty that the lessee will continue leasing the property beyond the period stated in the lease, the lease term is indefinite. , affg. a memorandum Opinion of this Court; , affd. without published opinion . In , affd. without published opinion , we considered a lease agreement between an individual and his solely controlled corporation. There, as here, the express terms of the lease provided for a term of less than 50 percent of the useful life of the asset and the lease contained no option to renew. In Sauey we held that because on its face the lease satisfied the 50 percent requirement of section 46(e)(3)(B), the taxpayer had satisfactorily borne the burden of proof with respect to that issue, *224 and that thereafter respondent bore the burden of going forward with evidence to refute the taxpayer's showing. We concluded, based on a fully stipulated record, that respondent failed to satisfy his burden. The instant case is distinguishable from Sauey in several respects. First, in Sauey we distinguished a case where the leasing arrangement is motivated primarily by tax considerations. . Respondent has established that petitioner did not intend to profit from the leasing arrangement and that the primary motivation for the arrangement was to pass to petitioner investment tax credits which Crocket Container and Jim's Box were unable to use during the years at issue. Respondent has also established that the equipment was purchased by petitioner solely to satisfy the particular needs of Crockett Container and Jim's Box. Such tailoring of petitioner's purchase to the needs of the corporations indicates that, when the lease agreements were entered into, he intended the leases to continue beyond their stated terms for as long as the corporations needed the equipment. Sanders v. Commissioner, supra at 1220. *225 Finally, respondent has established, through petitioner's own testimony, that when the leases were entered into petitioner intended for Crockett Container and Jim's Box to use the equipment for as long as it was useful to them. In conclusion, respondent has established the elements which were absent in Sauey. We find that respondent has satisfied his burden of going forward with evidence to show that the realistic contemplation of the parties was that the lease terms would be for an indefinite period. Petitioners have therefore failed to satisfy the requirements of section 46(e)(3)(B), and respondent's determination as to the investment tax credit is affirmed. II. ADDITIONS TO TAX
Section 6653(a) and, beginning with taxable year 1981, section 6653(a)(1), provide for an addition to tax equal to 5 percent of any underpayment if any part of the underpayment is due to negligence or intentional disregard of rules and regulations. Section 6653(a)(2) provides for an addition to tax equal to 50 percent of the interest payable on the deficiency with respect to the portion of the underpayment which is attributable to negligence or intentional disregard of rules and regulations.
*226 Negligence under section 6653(a) and 6653(a)(1) is the lack of due care or the failure to act as a reasonable person would act under the same circumstances where there is a legal duty to act. . Petitioner bears the burden of proving that no part of the underpayments for 1980 and 1981 is due to negligence or intentional disregard of rules and regulations. ; Rule 142(a). Prior to trial, petitioners conceded that they failed to report interest and dividend income totalling $ 9,974 for taxable year 1980. In addition, petitioner admits he entered into the leasing agreements at issue, on which he based the claimed investment tax credits in taxable years 1980 and 1981, even though he intended for the corporations to use the items of equipment for their entire useful lives. We find that petitioners have failed to prove that any part of the underpayments for 1980 and 1981 was not due to negligence. Respondent's determination regarding the additions to tax under sections 6653(a), 6653(a)(1), and 6653(a)(2) is therefore affirmed. In light of the foregoing, and after *227 concessions by both parties, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. * 50% of the interest due on the deficiency.↩